UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| JOSEPH BABINEAUX, JR., ET AL. | CIVIL ACTION NO. 6:18-CV-00233 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| MARK GARBER, ET AL. | MAG. JUDGE PATRICK J. HANNA |

RULING

Pending here is a Motion for Summary Judgment filed by Defendants James LeBlanc ("LeBlanc"), individually, as the Secretary of the Louisiana Department of Public Safety and Corrections ("DPSC"); Perry Stagg ("Stagg"), individually and in his official capacity as Assistant Deputy Secretary for Adult Services for the DPSC; and Angela Griffin ("Griffin"), individually and in her official capacity as Assistant Deputy Secretary for Adult Services for the DPSC (collectively "the State Defendants") [Doc. No. 58]. Plaintiffs Joseph Babineaux, Jr. ("Babineaux"), Moses Arceneaux ("Arceneaux"), and Mark Austin ("Austin") (collectively "Plaintiffs") have filed an opposition [Doc. No. 60].

For the following reasons, the Court GRANTS the State Defendants' Motion for Summary Judgment [Doc. No. 58].

I.      FACTS

Plaintiffs claim that they were incarcerated in the Lafayette Parish Correctional Center ("LPCC") for a period of time in excess of their sentences. In their Complaint, they asserted claims under 42 U.S.C. § 1983 ("Section 1983") for violation of the due process rights guaranteed by the Fourteenth Amendment to the United States Constitution. They also asserted claims for violation of the due process protections of Article 1, Section 2 of the Louisiana Constitution. Finally, they

asserted claims for false imprisonment and intentional infliction of emotional distress under Louisiana law.

Plaintiffs named six defendants: (1) Mark Garber, individually and in his capacity as the Sheriff of Lafayette Parish; (2) Cathy Fontenot, individually and in her official capacity as the Warden of the LPCC; (3) LeBlanc, individually; (4) Stagg, individually and in his official capacity; (5) Griffin, individually and in her official capacity; and (6) Berkley Insurance Company, the alleged insurer for the Lafayette Parish Sheriff's Office.

On October 11, 2018, the Court dismissed Plaintiffs' Section 1983 claims against Stagg and Griffin, in their official capacities, and Plaintiffs' state law claims against LeBlanc. [Doc. Nos. 37 and 38].

On January 14, 2019, the Court dismissed Plaintiffs' State law claims against Stagg and Griffin, in their individual capacities. [Doc. No. 45].

As a result of the previous rulings, Plaintiffs' remaining claims against the State Defendants are as follows:

> Section 1983 claims against LeBlanc, individually;
>
> Section 1983 claims against Stagg and Griffin, individually; and
>
> State law claims against Stagg and Griffin, in their official capacities.

The State Defendants now move for entry of summary judgment on the remaining claims on the grounds that there is no genuine issue of material fact that (1) the State Defendants are entitled to qualified immunity in their individual capacities from suit under Section 1983; and (2) Plaintiffs' State law claims against Stagg and Griffin, in their official capacities, are barred by the Eleventh Amendment.

Plaintiffs oppose summary judgment primarily on the grounds that the State Defendants, acting under the color and authority of State law, were carrying out and implementing an unconstitutional procedure and policy. Plaintiffs argue that, although the State Defendants might not have "actually participated" and carried out the wrongdoing—they carried out a policy that was unconstitutional and for this reason should be held accountable.

The issues are fully briefed, and the Court is prepared to rule.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache*

*Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248.)

      **B.**    **Analysis**

          **1.**    **Process of Release from DPSC Custody**

Once arrested, an offender is placed in the custody of the sheriff of the parish where his charges are pending. Offenders who are in parish custody awaiting trial on new charges are called "pretrial detainees." DPSC does not have knowledge of the existence, identity, or length of detention of pretrial detainees. DPSC does not escort pretrial detainees to court or appear for any court appearances.  In other words, DPSC has no connection to an offender until he is sentenced regarding a felony conviction and committed to DPSC's custody. (*See* La. R. S. 15:824C(1), "Notwithstanding any provision of law to the contrary, only individuals actually sentenced to death or confinement at hard labor shall be committed to the Department of Public Safety and Corrections.").

However, DPSC is indisputably responsible for ensuring that offenders who are sentenced to its custody serve the sentences imposed upon them by the courts and are timely released upon completion of their sentences.  [Griffin Affidavit, Doc. No. 58-3].

DPSC's obligation to ensure sentences are properly executed commences when custody of the offender is transferred from the parish to DPSC; not at the moment of sentencing. DPSC cannot be obligated to release an offender whose arrest and pretrial incarceration are not known to DPSC.

DPSC receives notice of an offender's incarceration when DPSC receives the information listed in Louisiana Code of Criminal Procedure Article 892 from the local sheriff of the parish of conviction and additional information required by DPSC. [*Id.*] The information and documentation compiled by the sheriff and transmitted to DPSC is known as the "Pre-Class Packet" and must include the following: "Basic Information and Interview for Local Jail Facilities Form," "Credit for DPSC Commitment Form," "Bill of Information," "Uniform Commitment Order with Judges Signature," "Suspect Rap Sheet with photo from the Automated Fingerprinting Identification System," and "DPSC Acknowledgements and Signature Statement signed by the inmate." [*Id.*] DPSC does not assume custody of an offender unless and until his Pre-Class Packet is completed, delivered to DPSC, and processed. [*Id.*] If any required document is missing from the Pre-Class Packet or any of the required documents is not completely filled-out and executed, the Pre-Class Packet will be returned to the local sheriff and custody of the offender will remain with the local sheriff. [*Id.*].

When an offender's complete Pre-Class Packet is received, DPSC personnel must verify all paperwork included is for the same person, confirm the sentence on the Uniform Commitment Order is a hard labor sentence to be served in the custody of DPSC, print the offender's criminal history from NCIC and verify that the offender's tracking number, from the NCIC fingerprinting paperwork and criminal history, coincides with the disposition for the conviction on the Uniform Commitment Order. [*Id.*]. Additionally, DPSC personnel must update the Criminal and Justice Unified Network ("CAJUN") using an offender's previously assigned DPSC number or new DPSC number, with the information obtained or learned from the Pre-Class Packet. [*Id.*].

After the necessary information is located in or entered into CAJUN, DPSC personnel complete the offender's time computation, which requires reviewing: any and all jail credit that is

applicable for each sentence (found on the Credit for DOC Commitment Form received from the jail); the crime convicted of (found on the Uniform Commitment Order); the date the crime was committed (found on the Bill of Information); the sentence date (the date the offender was given an imposed sentence to DPSC (found on the Uniform Commitment Order); the sentence start date (if deferred sentence, the date the Uniform Commitment Order gives to report to jail and the date the offender was remanded as listed on the Credit for DOC Commitment Form from the jail); the sentence length for each charge (the amount of time listed on the Uniform Commitment Order to serve in the custody of DPSC on a new commitment); offender class for the charge related to number of felony convictions (calculated by using the information on the CAJUN system and the Criminal History Reports); and Good time rate and parole eligibility for each charge (determined by the commitment date and the type of crime). [*Id.*].

DPSC personnel also consider whether the offender has any time to serve on other sentences based on the information obtained from their criminal history and dispositions. [*Id.*]. This process requires DPSC personnel to obtain an offender's criminal history reports (State Police criminal history, FBI criminal history and any out of state criminal history) to determine whether the offender has any warrants, charges without dispositions, and any Louisiana or out-of-state proceedings in which the offender may need to serve time. For every arrest or charge without a recorded disposition, DPSC personnel must contact the arresting agency, clerk of court, or prosecuting agency, to determine the disposition of each charge. [*Id.*].

When a time computation is completed on an offender, DPSC personnel are required to complete a release clearing checklist on each offender, in order for the offender to be released from custody after serving their time. [*Id.*]. The release clearing checklist is to assure that all processes have been followed and to confirm that an offender should be released. [*Id.*].

If it is determined that an offender is entitled to release, the proper release paperwork, including the diminution of sentence certificate, and form letter will be transmitted by email or fax to the supervising Probation and Parole district, or to the local facility where the offender is being held. [*Id*.]. The DPSC personnel transmitting the release paperwork confirm the release paperwork was received by either the supervising Probation and Parole district or by the facility where the offender is located. [*Id*.].

The Court will next examine the circumstances of each of the Plaintiffs' incarcerations.

### 2.      Plaintiffs' Incarcerations

#### a.      Babineaux

Babineaux was arrested in Lafayette Parish on September 24, 2016, and was held at LPCC in the custody of the Lafayette Parish Sheriff Department. On March 16, 2017, Babineaux was sentenced to one year at hard labor, with credit for time served, for attempted possession of a firearm by a convicted felon. [Doc. Nos. 58-3 and 4].  DPSC received Babineaux's Pre-Class paperwork regarding his sentencing on April 4, 2017. [*Id*.] On April 5, 2017, DPSC employee Bianca Spradley worked his time computation. [*Id*.] Then, less than two days after Babineaux's Pre-Class paperwork was received, DPSC employee Susan Harris cleared his case for release and issued a Diminution of Sentence Certificate that was effective on that same day, April 6, 2017. [*Id*.]  Babineaux was released from custody on April 6, 2017, two days after the DPSC received his Pre-Class paperwork. [*Id*.].

#### b.      Arceneaux

Arceneaux was arrested in Lafayette Parish on March 24, 2016, and was held at the LPCC in the custody of the Lafayette Parish Sheriff Department, pending trial. [Doc. Nos. 58-3 and 5]. On March 16, 2017, Arceneaux was sentenced to one year at hard labor for the charge of negligent

homicide, with credit for time served. [*Id*.] DPSC received Arceneaux's Pre-Class Packet from the Sheriff on March 30, 2017. [*Id*.]. The same day, a Writ of Habeas Corpus was granted, and Arceneaux was immediately released from the LPCC. [*Id*.]   After his release from custody, Arceneaux reported to the Lafayette District of Probation and Parole who then notified DPSC of Arceneaux's release from incarceration. [*Id*.].

c.      **Austin**

Austin was arrested in Lafayette Parish on May 17, 2016, and held at LPCC in the custody of the Lafayette Parish Sheriff Department. [Doc. Nos. 58-3 and 6]. On October 26, 2017, Austin was sentenced to seventeen months at hard labor for attempted felon in possession of a weapon, with credit for time served. [*Id*.]. On November 8, 2017, DPSC received Austin's Pre-Class paperwork regarding his sentencing. [*Id*.]. On November 20, 2018, DPSC employee Carol Ambeaux computed Austin's time, and DPSC employee Tara Hookfin issued a Certificate of Release that was sent to the Lafayette Parish Correctional Center for Austin's release. [*Id*.].

Subsequent to these processing periods of two days for Babineaux, one day for Arceneaux, and twelve days for Austin, this lawsuit ensued against the State Defendants.

3.      **Qualified Immunity Under Section 1983**

All three State Defendants contend that they are entitled to qualified immunity from suit under Section 1983 in their individual capacities. Although a plaintiff may pursue an action under Section 1983 against a state official in his individual capacity, that official might be protected by qualified immunity. Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. *See Club Retro LLC v. Hilton*, 568 F.3d 181,194 (5th Cir.2009).

Courts use a two-step analysis to determine whether qualified immunity applies. First, the court must determine whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, if a violation has been alleged, the court must determine whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Collier v. Montgomery*, 569 F.3d at 217 (citing *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007)).

There is a clearly established right to timely release from prison. *Fleming v. Tunica County Mississippi*, 497 Fed. App'x 381, 384 (5th Cir. 2012); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010); *Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980).

With regard to the second inquiry, an official's conduct violates clearly established law where, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

What "clearly established" means depends largely upon the level of generality at which the relevant legal rule is to be identified. *Wernecke v. Garcia*, 591 F.3d 386, 393 (5th Cir. 2009) (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). "[A]n official does not lose qualified immunity merely because a certain right is clearly established in the abstract." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir.2004)). "Officials should receive the protection of qualified immunity unless the law is clear in the more particularized sense that reasonable officials should be on notice that their conduct is unlawful." *Wernecke*, 591 F.3d at 393 (internal quotation marks and citations omitted).

9

"An official that violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable. At bottom, a plaintiff must show that no reasonable officer could have believed his actions were proper." *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018) (internal citations and quotation marks omitted).

Supervisory officials cannot be held liable under Section 1983 for the actions of their subordinates on any theory of vicarious or *respondeat superior* liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Plaintiffs must show that the conduct of the supervisor denied their constitutional rights. A supervisory official may be held liable under Section 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011) (citing *Gates v. Texas Dep't of Prot. & Reg. Servs*., 537 F.3d 404, 435 (5th Cir. 2008)).  To establish supervisor liability for constitutional violations committed by subordinate employees, "plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Id*.

"A plaintiff must plead that each government official, through the official's own individual actions, has violated the Constitution.") *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also, Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)(*per curiam*); *Reimer v. Smith*, 663 F.2d 1316, 1323 (5th Cir.1981) (A plaintiff must establish a causal connection between the acts or omissions of the defendant and the resulting constitutional deprivation).

Here, Plaintiffs allege that LeBlanc is personally liable under Section 1983 for:

> (a) Inadequate and improper training, education, supervision, and discipline of law enforcement agents, officers, or deputies commissioned and employed by DPSC;

10

(b) Condoning and allowing police behavior that has been declared unconstitutional and unlawful; and

(c) Inadequate and improper procedures, policies and practices for identifying and taking appropriate action against law enforcement agents/officers/deputies and employees who are in need of re-training, corrective measures, reassignment, or other disciplinary and non-disciplinary actions through a positive and early warning system designed to prevent the violations of citizens' constitutional and civil rights, including those of plaintiffs.

[Plaintiffs Second Amending and Supplemental Complaint, Doc. No. 8, ⁋ 106]

In *Porter v. Epps*, the Fifth Circuit discussed the burden regarding failure to promulgate policy and failure to train or supervise by stating:

Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference...

To establish that a state actor disregarded a known or obvious consequence of his actions, there must be "actual or constructive notice" "that a particular omission in their training program [or a particular policy] causes ... employees to violate citizens' constitutional rights" and the actor nevertheless "choose[s] to retain that program." "A pattern of similar constitutional violations [...] is ordinarily necessary to demonstrate deliberate indifference," because "without notice that a course of training [or a policy] is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." "Without cabining failure-to-train claims in this manner [or, logically, failure-to-promulgate-policy claims], a standard 'less stringent' than deliberate indifference would be employed, and 'a failure-to-train claim would result in *de facto respondeat superior* liability'."

*Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiffs' allegations under Section 1983 against Defendants Stagg and Griffin are the same and appear to be predicated in part on *respondeat superior* liability. Plaintiffs allege both Stagg and Griffin are responsible for setting and administering DPSC policy pertaining to processing prisoners into and within the DPSC system; are responsible for the computation of

11

felony sentences and for timely release of persons sentenced to DPSC; were personally aware of flawed procedures and did not take prompt corrective or responsive action; and failed to establish policies whereby their staff would take prompt corrective and responsive action upon receipt of an allegation of over detention. [Plaintiffs' Second Amending and Supplemental Complaint, Doc. No. 8, ¶¶ 23-24].

Plaintiffs then generally state, with regard to the specific allegations regarding each Plaintiff, that "the DPSC Defendants did not timely complete [Plaintiff's] time calculation, release assessment, or otherwise process him into and out of the DPSC system." [*Id*].

Because the State Defendants have raised a qualified immunity defense, Plaintiffs carry the burden of demonstrating the inapplicability of qualified immunity. *See Club Retro LLC v. Hilton*, 568 F.3d at 194. In their opposition, Plaintiffs produce no summary judgment evidence in the form of affidavits, depositions, or declarations.  Instead, they rely solely on copies of two audits by the Legislative Auditor, one in 2017 and one in 2019. [Doc. Nos. 60-2 and 3].

The 2019 audit indicates that, during the period July 1, 2018, through February 28, 2019, the DPSC processed more than 30,000 inmate sentence computations. [Doc. No. 60-3]. Plaintiffs point to general conclusions in the audits that the DPSC does not have adequate supervisor secondary review of every time computation, that some computations tested had inaccurate information, and that the DPSC policy for transferring offenders in state facilities has deficiencies. [*Id*.].  Plaintiffs further point out that one "audit suggested that the DOC should revise its policy for local facilities to include a timeframe for local facilities to notify DOC of transfers."  [Doc. No. 60, p. 9].  Additionally, Plaintiffs state that one audit concluded, "DOC does not have any policies, procedures, manuals, or standardized guidance that outlines the correct way to calculate release dates. This leads to inconsistent calculation methods." [Id.].

What is lacking is any allegation by Plaintiffs, and any summary judgment evidence to prove, that DOC improperly calculated any of the Plaintiff's release dates.  Also lacking is any summary judgment evidence of deliberate indifference. The Court additionally notes that one of the audit reports submitted by Plaintiffs included the following response from LeBlanc:

> Calculating release dates is a complex process.  Each legislation session that results in a change to laws that impact time computation requires the Department to develop a method to implement the change and clarify the impacts of the change to existing laws and adjust training accordingly.  In addition, when the legislations is perspective only, it means that we continue to have cases that must be worked and tracked following the old laws and new laws.  As such, time computation staff are expected to know (or learn if they are new staff) all time computation laws, old and new, and the dates they are in effect.  Each staff member works under the guidance of a supervisor that is available to answer questions and train them through unique cases.  Each employee has been through time computation training and works with time computation guides to help with calculations.

[Doc. No. 60-3, p. 13].

The Court will address the allegations made by each Plaintiff.

### i.    Babineaux

As indicated above, Babineaux was arrested in Lafayette Parish on September 24, 2016, and was held at the LPCC in the custody of the Lafayette Parish Sheriff Department, pending trial. On March 16, 2017, Babineaux was sentenced to one year at hard labor, with credit for time served, for attempted possession of a firearm by a convicted felon.  Babineaux had not served a total of one year at the time of his sentencing, so it was not facially apparent that he was entitled to release at the time of sentencing, as he claims. Louisiana Revised Statute 15:571.2 establishes that offenders in DPSC custody may earn a diminution of sentence by good behavior and performance of work or self-improvement activities, or both, to be known as "good time," which is a "rate of

one and one half day for every one day in actual custody," including time in actual custody before sentencing.

DPSC received Babineaux's Pre-Class paperwork regarding his sentencing on April 4, 2017. Then, less than two days after Babineaux's Pre-Class paperwork was received, DPSC cleared his case for release and issued a Diminution of Sentence Certificate that was effective on that same day, April 6, 2017. Babineaux was released from custody on April 6, 2017.

Although Babineaux alleges that the DPSC Defendants did not timely complete his time calculation, release assessment, or otherwise process him into and out of the DPSC system, Babineaux has failed to show how his clearly established constitutional rights were violated within the short amount of time it took DPSC personnel to receive and process his paperwork. Furthermore, for the purposes of liability under Section 1983, Plaintiffs have cited no jurisprudence that establishes that processing a prisoner's paperwork for release in less than 48 hours after receipt is unreasonable.

Therefore, the Court finds that Babineaux has failed to create a genuine issue of material fact that his clearly established constitutional rights were violated, or, that the State Defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. All three State Defendants are entitled to qualified immunity as to Babineaux's Section 1983 claims.

### ii.   Arceneaux

As indicated above, Arceneaux was arrested in Lafayette Parish on March 24, 2016. He was held at the LPCC, in the custody of the Lafayette Parish Sheriff Department, pending trial. Arceneaux pled guilty to the charge of negligent homicide on March 16, 2017, and was, at that time, sentenced to one year at hard labor, with credit for time served. DPSC first received notice

of Arceneaux's arrest and sentence when his Pre-Class Packet was received on March 30, 2017. The same day, a Writ of Habeas Corpus was granted, and Arceneaux was immediately released from the LPCC. After his release from custody, Arceneaux reported to the Lafayette District of Probation and Parole who then notified DPSC of Arceneaux's release from incarceration. Arceneaux alleges "the DPSC Defendants did not timely complete Mr. Arceneaux's time calculation, release assessment, or otherwise process him into and out of the DPSC system." [Doc. No. 8 ⁋ 49].

As it is undisputed that DPSC did not receive Arceneaux's Pre-Class Packet until March 30, 2017, the same date that Arceneaux was released via a court order, there is no evidence that the State Defendants failed to timely complete Arceneaux's time calculation or that anyone at DPSC violated his constitutional rights. Arceneaux was not in DPSC custody before he was released from incarceration; therefore, none of the State Defendants violated Arceneaux's constitutional rights and all three State Defendants are entitled to qualified immunity as to Arceneaux's Section 1983 claims.

### iii.   Austin

As indicated above, Austin was arrested in Lafayette Parish on May 17, 2016, and held at LPCC in the custody of the Lafayette Parish Sheriff Department, pending trial. On October 26, 2017, Austin was sentenced to seventeen months at hard labor for attempted felon in possession of a weapon, with credit for time served. On November 8, 2017, DPSC received Austin's Pre-Class paperwork regarding his sentencing. On November 20, 2018, Carol Ambeaux computed Austin's time, and Tara Hookfin issued a Certificate of Release that was sent to the LPCC for Austin's release

Like the allegations asserted by Arceneaux and Babineaux, Austin's allegations against the individual State Defendants are "the DPSC Defendants did not timely complete Mr. Austin's time calculation, release assessment, or otherwise process him into and out of the DPSC system."  [Doc. No. Doc. 8 ₱ 66].

First, the Court finds that Austin has failed to cite any jurisprudence that suggests that completing the processing of a prisoner's paperwork for release twelve days after receipt is unreasonable. However, assuming *arguendo* that Austin's constitutional rights were violated by someone at DPSC, the Court will consider whether Austin has created a genuine issue of material fact that the State Defendants' actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.

 Austin has produced no summary judgment evidence to prove that the policies of any of the State Defendants caused the delay in the process of his paperwork such that they could be held liable under supervisory liability. Nor has Austin produced any summary judgment evidence to establish that any of the State Defendants were personally involved or even knew of Austin's time calculation, because it is undisputed that Austin's initial time calculation was computed by Carol Ambeau and then reviewed by Tara Hookfin. As indicated above, supervisory officials cannot be held liable under §1983 for the actions of their subordinates on any theory of vicarious or *respondeat superior* liability. *Estate of Davis ex rel. McCully, supra.*

Therefore, to the extent Austin properly asserts Section 1983 claims against the State Defendants regarding his time calculation, Austin has failed to establish that there is a genuine issue of material fact that any of the State Defendants failed to implement adequate policies or were personally involved with his time computation.

In summary, Plaintiffs have failed to carry their burdens of establishing a genuine issue of material fact that the State Defendants are not entitled to qualified immunity as to Plaintiffs' Section 1983 claims.  Thus, the State Defendants' Motion for Summary Judgment is granted as to the Section 1983 claims against them in their individual capacities.

### 4.      State law claims against Stagg and Griffin in their official capacities

Plaintiffs assert that this Court has jurisdiction over their State law claims for violation of their state due process rights guaranteed by Article 1, Section 2 of the Louisiana Constitution and state torts for false imprisonment and intentional infliction of emotional distress. Defendants Stagg and Griffin, on the other hand, contend that they are entitled to judgment as a matter of law dismissing Plaintiffs' state law claims against them in their official capacities because those claims are barred by the Eleventh Amendment.

Stagg and Griffin argue that, "[t]he Eleventh Amendment of the United States Constitution bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." See *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citing U.S. Const. amend. XI). Sovereign immunity protects not just the state itself but also "any state agency or entity deemed an 'alter ego' or 'arm' of the state." *Id*.  State officials, sued in an official capacity, are "alter egos" of the State. *Hughes v. Savell*, 902 F.2d 376 (5th Cir. 1990); *Poullard v. Turner*, 184 F.3d 815, *1 (5th Cir. 1999) (*per curiam*) ("when a plaintiff accuses a state official of violating state common law when acting in the acting in the course and scope of their employment, the Eleventh Amendment prevents him from raising the claim in federal court"). This immunity applies unless it is waived by consent of a state or abrogated by Congress." *Cozzo v. Tangipahoa Parish Council–President Government*, 279 F.3d 273, 280–81 (5th Cir. 2002).  Congress did not abrogate the states' Eleventh Amendment

immunity by enacting § 1983. *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). Moreover, Louisiana has not waived sovereign immunity. La. R.S. 13:5106(A) (prohibiting suits against the State in any court other than a Louisiana state court); *Champagne* at 314.

The Court agrees with Stagg and Griffin that they have Eleventh Amendment immunity as to Plaintiffs' State law claims against them in their official capacities. An action by a citizen against a state official in his official capacity is an action against the State, and is barred by the Eleventh Amendment, subject only to the limited exception permitted by *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908) (action seeking prospective injunctive relief against state officer permissible against ongoing constitutional violation). See *Henley v. Simpson*, 527 F. App'x 303, 305 (5th Cir. 2013).

The Fifth Circuit has noted that *Ex Parte Young* "does not serve to subject state officials to suit in federal court over alleged violations of state law, as the result does not advance the concerns of *Ex Parte Young* and 'also conflicts directly with the principles of federalism that underlie the Eleventh Amendment.'" *Earles v. State Bd. Of Certified Pub. Accountants*, 139 F.3d 1033, at 1039-40 (5th Cir. 1998).

The Eleventh Amendment bars suits in federal court against state officials where the state is the real, substantial party in interest. *See Hughes v. Savell,* 902 F.2d 376, 378 (5th Cir.1990). The state is the real party in interest if the decision rendered in a case will operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or refrain from acting. *See id.* at 378. Under this reasoning, a claim that a state official violated state law in carrying out his official responsibilities is a claim against the state. *See id.* Therefore, when a plaintiff accuses a state official of violating state common law

18

when acting in the acting in the course and scope of their employment, the Eleventh Amendment prevents him from raising the claim in federal court regardless of whether he seeks damages or injunctive relief, and regardless of whether he invokes the court's original or supplemental jurisdiction. *See id.; see also Poullard v. Turner,* 184 F.3d 815 (5th Cir. 1999).

Thus, Stagg and Griffin are entitled to judgment as a matter of law dismissing Plaintiffs' State law claims against them in their official capacities.

## III.   CONCLUSION

For the reasons set forth above, the State Defendants' Motion for Summary Judgment [Doc. No. 58] is GRANTED.   Plaintiffs' Section 1983 claims against LeBlanc, individually, are DISMISSED WITH PREJUDICE; Plaintiffs Section 1983 claims against Stagg and Griffin, individually, are DISMISSED WITH PREJUDICE; and Plaintiffs' State law claims against Stagg and Griffin, in their official capacities, are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 11th day of May, 2020.

**TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE**

19